23-6841-ag
*Turin v. U.S. Dep't of Lab.*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of November, two thousand twenty-four.

PRESENT:
    SUSAN L. CARNEY,
    JOSEPH F. BIANCO,
    WILLIAM J. NARDINI,
        *Circuit Judges.*

———————————————————————————————

BENTZION S. TURIN,

        *Petitioner*,

        v.                                                    23-6841-ag

UNITED STATES DEPARTMENT OF LABOR,

        *Respondent*,

MAIDEN HOLDINGS, LTD., MAIDEN INSURANCE COMPANY LIMITED, MAIDEN HOLDINGS NORTH AMERICA, LTD., ART RASCHBAUM, REPRESENTATIVE OF THE ESTATE OF MICHAEL KARFUNKEL, BARRY ZYSKIND, AII INSURANCE MANAGEMENT, LTD., AMTRUST FINANCIAL

SERVICES, INC.,

   *Intervenors*.

_____

| | |
|---|---|
| FOR PETITIONER: | EDWARD S. RUDOFSKY, Edward S. Rudofksy, P.C., Melville, New York. |
| FOR RESPONDENT: | PRIOM AHMED (Seema Nanda, Solicitor of Labor, Jennifer S. Brand, Associate Solicitor, Sarah Marcus, Deputy Associate Solicitor, Megan E. Guenther, Counsel for Whistleblower Programs, *on the brief*), *for* United States Department of Labor, Washington, District of Columbia. |
| FOR INTERVENORS: | A. MICHAEL WEBER (Edward T. Ellis, Emma J. Diamond, *on the brief*), Littler Mendelson, P.C., Philadelphia, Pennsylvania, and New York, New York, *for* Maiden Holdings, Ltd., Maiden Insurance Company Limited, Maiden Holdings North America, Ltd., Art Raschbaum, Representative of the Estate of Michael Karfunkel, AII Insurance Management Ltd., AmTrust Financial Services, Inc. |
| | Y. DAVID SCHARF (Danielle C. Lesser, *on the brief*), Morrison Cohen, LLP, New York, New York, *for* Barry Zyskind. |

**UPON DUE CONSIDERATION** of this petition for review of a decision by the United States Department of Labor, Administrative Review Board, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the petition for review is **DENIED**.

Petitioner Bentzion S. Turin seeks review of a decision by the Administrative Review Board ("ARB") of the United States Department of Labor ("DOL") affirming an administrative law judge's ("ALJ") dismissal of his complaint alleging retaliation in violation of the Sarbanes-

Oxley Act, 18 U.S.C. § 1514A. Specifically, Turin argues that (1) substantial evidence does not support the agency's conclusion that he did not engage in Sarbanes-Oxley protected activity because he neither subjectively nor objectively reasonably believed that fraud or securities law violations were occurring at his company, and (2) the agency's decision is arbitrary and capricious because it improperly disregarded the ALJ's earlier decision denying a motion for judgment on partial findings under Federal Rule of Civil Procedure 52(c). We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to deny the petition.

## BACKGROUND

Turin was the former Chief Operating Officer, Secretary, and General Counsel of Maiden Holdings, Ltd. ("Maiden"), a reinsurance company founded by Barry Zyskind, Michael Karfunkel, and George Karfunkel. Maiden's largest client was the insurance company AmTrust Financial Services, Inc. ("AmTrust"). Zyskind served both as the non-executive Chairperson of Maiden's Board of Directors, as well as the President, Chief Executive Officer ("CEO"), and a director of AmTrust. The Karfunkels were majority shareholders of AmTrust and owned significant shares in Maiden. In addition, Zyskind was Michael Karfunkel's son-in-law.

In 2008, Maiden considered acquiring, and eventually did acquire, GMAC RE, another reinsurance company. To maintain its credit rating after the acquisition, Maiden's credit rating company, A.M. Best, required Maiden to raise $260 million in capital. Zyskind led the effort to secure that capital, which the Karfunkels agreed to backstop if insufficient funds were raised. Maiden considered a number of financing options, including, *inter alia*, a rights offering model and a trust preferred security model. Turin claims that he reasonably believed Zyskind was

3

committing criminal fraud or violating securities laws during this capital-raising process by seeking to pursue the trust preferred transaction, which would purportedly benefit the Karfunkels at the expense of Maiden's other shareholders. Moreover, he asserts that he raised his concerns to several people, including Maiden's CEO, Arturo Raschbaum. In addition, Turin contends that, when he confronted Zyskind with those concerns, he was fired on the spot.

In 2009, Turin filed a whistleblower retaliation complaint against Maiden and others with the Occupational Safety and Health Administration ("OSHA"). *See* 18 U.S.C. § 1514A(b)(1)(A); Delegation of Authority and Assignment of Responsibility to the Assistant Secretary for OSHA, 85 Fed. Reg. 58393 (2020). Turin presented his case-in-chief before an ALJ over eleven days in 2014 and 2015. At the close of Turin's case-in-chief, Maiden[1] moved for judgment on partial findings pursuant to Federal Rule of Civil Procedure 52(c). The ALJ denied that motion in a 2016 decision and order. Maiden then presented its case between 2017 and 2018, and Turin testified further in rebuttal. On September 2, 2021, the ALJ issued a 134-page decision and order dismissing Turin's complaint. Specifically, the ALJ determined that: (1) Turin did not engage in activity protected under Sarbanes-Oxley because he did not subjectively or objectively reasonably believe that Zyskind was committing criminal fraud or securities law violations; (2) Maiden was not aware that Turin engaged in any protected activity;

---

[1] While we refer to Maiden (Maiden Holdings, Ltd.) throughout this order, the OSHA proceedings also included the other Intervenors: Maiden Insurance Company Limited, Maiden Holdings North America, Barry Zyskind, AII Insurance Management, Ltd., AmTrust, Art Raschbaum, and Representative of the Estate of Michael Karfunkel. In 2016, the ALJ dismissed Turin's claims against AII Insurance Management and AmTrust. Therefore, unless otherwise indicated, when we refer to "Maiden" in discussing the OSHA proceedings, we are referring to not only Maiden Holdings, Ltd., but also Maiden Insurance Company Limited, Maiden Holdings North America, Barry Zyskind, Art Raschbaum, and Representative of the Estate of Michael Karfunkel.

4

(3) Maiden established that it fired Turin for reasons other than his alleged whistleblowing; and (4) Maiden would have fired Turin in any event based on evidence (acquired after his termination) of an undisclosed conflict of interest and his submission of an unapproved employment agreement to the Securities and Exchange Commission ("SEC"). On June 29, 2023, the ARB summarily affirmed the ALJ's decision. In doing so, the ARB found that substantial evidence supported the ALJ's conclusion that Turin did not engage in Sarbanes-Oxley protected activity because he did not have a subjective or objectively reasonable belief that the conduct he complained of constituted a requisite violation, but declined to review the ALJ's other conclusions. This petition for review followed.

## DISCUSSION

We apply the rules and procedures set forth in the Administrative Procedure Act to review a final decision by the ARB on a whistleblower retaliation claim under 18 U.S.C. § 1514A. *See* 18 U.S.C. § 1514A(b)(2)(A); 49 U.S.C. § 42121(b)(4)(A); *Bechtel v. U.S. Dep't of Lab.*, 710 F.3d 443, 445 (2d Cir. 2013). We will uphold the findings and conclusions of the ARB unless they are "unsupported by substantial evidence." 5 U.S.C. § 706(2)(E); *see Bechtel*, 710 F.3d at 445–46. Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." *Metro-N. Commuter R.R. Co. v. U.S. Dep't of Lab.*, 886 F.3d 97, 106 (2d Cir. 2018) (internal quotation marks and citation omitted). "The mere possibility of drawing two inconsistent conclusions from the evidence does not render an agency's finding unsupported by substantial evidence." *Id.* (internal quotation marks and citation omitted).

We will also uphold an ARB decision so long as it is not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see Bechtel*, 710

5

F.3d at 445. Under this deferential standard, "[w]e will set aside the ARB's decision only if it has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Bechtel*, 710 F.3d at 446 (quoting *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007)).

Sarbanes-Oxley "prohibits publicly traded companies from retaliating against employees who report what they reasonably believe to be instances of criminal fraud or securities law violations." *Murray v. UBS Sec., LLC*, 601 U.S. 23, 27 (2024). To state a *prima facie* Sarbanes-Oxley retaliation claim, an employee must show by a preponderance of the evidence that: "(1) she engaged in protected activity; (2) the employer knew that she engaged in the protected activity; (3) she suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action." *Bechtel*, 710 F.3d at 447 (internal quotation marks and citation omitted). If an employee succeeds in doing so, the burden shifts to the employer to "prove by clear and convincing evidence that it would have taken the same unfavorable personnel action in the absence of that protected behavior." *Id.* (internal quotation marks and citation omitted).

Here, with respect to the requirement that the employee has engaged in protected activity, "relief pursuant to § 1514A turns on the reasonableness of the employee's belief that [the employer's conduct at issue] violated one of the enumerated provisions" of the criminal or securities laws listed in Sarbanes-Oxley. *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 221 (2d Cir. 2014) (emphasis omitted). Because "[a] reasonable belief contains both subjective and

6

objective components," an employee must show both "that he believed that the conduct constituted a violation" and "that a reasonable person in his position would have believed that the conduct constituted a violation." *Id.* (internal quotation marks and citation omitted). "The objective prong of the reasonable belief test focuses on the basis of knowledge available to a reasonable person in the circumstances with the employee's training and experience." *Id*. (internal quotation marks and citation omitted).

## I.     Rule 52(c) Decision

As an initial matter, we reject Turin's contention that the agency's final order was arbitrary and capricious because it was inconsistent with the ALJ's 2016 order denying Maiden's Rule 52(c) motion for judgment on partial findings.

Rule 52(c) allows a judge to "enter judgment against the party on a claim" if that "party has been fully heard on an issue," "the court finds against the party on that issue," and that issue is dispositive. Fed. R. Civ. P. 52(c). Here, Maiden made its Rule 52(c) motion after Turin finished presenting his case-in-chief, but prior to Maiden presenting its own case. Relying initially on the testimony and evidence presented by Turin, the ALJ denied the motion, concluding, based on a preponderance of the evidence received *at that point*, that Turin "succeeded . . . in his burden to prove a prima facie case of retaliation under the Act." Special App'x at 48. That was not, however, the ALJ's final determination on the issue because Maiden had not yet presented any of its own evidence on that issue. The ALJ made this clear in her order by emphasizing that "[Maiden] must now present [its] own prima facie case and show either that [Turin] is, in fact, unable to make out his prima facie case, or establish by clear and convincing evidence that [Maiden] would have taken the same unfavorable personnel action in

7

the absence of the [protected] behavior." Special App'x at 37 (internal quotation marks and citation omitted) (fifth alteration in original).

After the ALJ resolved the Rule 52(c) motion, Maiden presented its case over a period of twenty-three days, with testimony from nine witnesses. Turin then testified further in rebuttal. In short, the ALJ acted well within her discretion in "declin[ing] to refer to any finding of fact or conclusion of law contained in the [Rule 52(c)] Order[]" because of "[t]he inclusion of additional testimony of witnesses and documentary evidence" in the record after that decision. Special App'x at 53 n.8.

## II.    Subjective Belief

Substantial evidence supports the agency's conclusion that Turin did not subjectively believe that Zyskind's conduct constituted criminal fraud or violated any securities law provisions.[2] As set forth below, that conclusion was based on the ALJ's credibility findings against Turin and in favor of Maiden's witnesses, the lack of written evidence and communication of his purported concerns, his purchase of a significant number of Maiden shares during the relevant period, and his failure to utilize Maiden's formal and anonymous reporting process.

---

[2] Turin argues that the ALJ applied an incorrect legal standard when she held that Turin did not hold a "subjectively reasonable belief." Petitioner's Br. At 35. Our review, however, is of the ARB decision, which did not adopt that legal standard. *See* Special App'x at 192 (finding that "substantial evidence supports the ALJ's finding that Turin did not have a subjective, good-faith belief that the conduct he complained of constituted a violation of SOX"). In any event, although the ALJ at times discussed Turin's "subjectively reasonable belief," she noted at the outset of the discussion that the complainant "must actually have believed that the conduct he complained of constituted a violation of relevant law." Special App'x at 165 (internal quotation marks and citation omitted). She then applied the correct legal standard when she concluded that Turin's actions during and after his termination "reveal that he did not subjectively believe that he blew the whistle on conduct that violated or even potentially violated the law." Special App'x at 165.

The ALJ found that Turin "lack[ed] credibility" because of the "substantial credible contradictions to his sworn testimony, lapses in memory, and a general tendency to exaggerate." Special App'x at 56. This determination is supported by substantial evidence. The ALJ's 2021 decision details how Turin's testimony was contradicted both by the testimony of other witnesses, whom the ALJ found credible, as well as documentary evidence. The ALJ also noted that "[s]everal events [] show[ing] a level of dishonesty in his dealings with Maiden further damage[d] [Turin's] credibility." Special App'x at 57. In particular, the ALJ focused on Turin's "lack of candor to Maiden management and to the outside [advising] parties" when he submitted an unsigned and unapproved employment contract for himself to the SEC, which "detrimentally affect[ed] his overall credibility." Special App'x at 58, 150 n.816. Although Turin attempts to explain this conduct, ample testimonial and documentary evidence supports the ALJ's adverse credibility finding.

Turin suggests that the credibility finding was arbitrary because the ALJ found him to be credible in her 2016 Rule 52(c) decision, but inexplicably changed her mind by 2021. However, as discussed *supra*, after the 2016 decision, Maiden put on its own evidence, which included, *inter alia*, the testimonial and documentary evidence that undermined Turin's accounts, and evidence regarding Turin's unauthorized employment agreement. Thus, there is no merit to Turin's claim that the ALJ's subsequent credibility determination, based on the additional evidence presented, was arbitrary. Similarly, we reject Turin's speculative assertion that the ALJ's credibility determination was based upon a bias against him because the ALJ believed that he disparaged a female employee.

9

In addition, the agency reasonably determined that Turin's failure to articulate his concerns about fraud, through conversations with others or in writing, further undermined his claim that he possessed the requisite subjective belief that Zyskind was violating any relevant provision of law. For example, CEO Raschbaum testified that, after Turin was fired by Zyskind, he had a conversation with Turin, but Turin did not raise any concerns regarding Zyskind's conduct. In addition, Larry Metz, who replaced Turin as general counsel, testified that Turin did not raise any concerns about fraud or a claim of retaliation when the two traveled together immediately after Turin was fired. Thus, the ALJ found that it was not until two weeks after his firing that Turin first referred to himself as a "Sarbanes Oxley Whistleblower," which he did in an email to CEO Raschbaum. Turin's claim to the contrary that he, in fact, raised his concerns earlier to CEO Raschbaum and others is supported largely by only his own self-serving testimony, which the ALJ reasonably found not to be credible. Although Turin faults Maiden for failing to call a number of witnesses who could deny his account of these events, there was nothing preventing Turin from calling those witnesses himself to corroborate his account, even if he believed they were "under the control of Maiden." Petitioner's Br. at 19; *see* Special App'x at 162 (ALJ noting that despite her having "declined no subpoena requests," Turin "chose . . . to call only one witness"). The ALJ also reasonably considered an email from Turin to outside counsel in which Turin stated that he was "hoping that we don't do this deal." App'x at 3879. In particular, the ALJ discounted that statement because Turin did not provide any further explanation in the email, and nothing else in that email suggested that Turin was concerned that fraud had occurred or was likely to occur.

10

The agency also reasonably relied on the fact that Turin purchased a significant number of Maiden shares during the period he was allegedly concerned about Zyskind's potentially fraudulent conduct. The stock purchases provided probative evidence that Turin did not subjectively believe that wrongdoing was ongoing at Maiden, because someone who believed serious fraud or securities violations were occurring at a company would be unlikely to invest heavily in that company. Turin argues, in response, that his purchases can be explained by the low price of Maiden's shares and his own confidence in Maiden's ability to respond effectively to his concerns. However, this argument is belied by the absence of any basis for his stated belief that the alleged fraudulent conduct would cease—particularly given his failure to clearly convey his purported concerns to anyone at Maiden, as found by the ALJ.

Finally, the ALJ noted that Turin did not follow Maiden's formal and anonymous process, which Turin himself created, to report his concerns about Zyskind's allegedly improper conduct. Although a Sarbanes-Oxley whistleblower is not required to raise his concerns through a formal channel, the fact that Turin failed to take advantage of the very process he fashioned provided additional support for the ALJ's finding.

At every turn, Turin asks this Court to draw conclusions from the record evidence that differ from those drawn by the agency. Such arguments are unavailing, however, because the "mere possibility of drawing two inconsistent conclusions from the evidence does not render an agency's finding unsupported by substantial evidence." *Metro-N. Commuter R.R. Co.*, 886 F.3d at 106 (internal quotation marks and citation omitted). In short, viewing the record as a whole, we conclude that there is substantial evidence to support the agency's finding that Turin did not subjectively believe that Zyskind's conduct violated any of the relevant criminal or securities

laws.   Therefore, the agency properly dismissed Turin's Sarbanes-Oxley retaliation claim on

that ground.[3]   *See Nielsen*, 762 F.3d at 221.

*          *          *

We have considered Turin's remaining arguments and find them to be without merit.

Accordingly, we **DENY** the petition for review.

FOR THE COURT:<br>Catherine O'Hagan Wolfe, Clerk of Court

---

[3]  Because we conclude that the agency properly dismissed the retaliation claim on this ground, we need not address Turin's challenge to the agency's additional determination that he also failed to satisfy the objective reasonableness requirement.